---

SO ORDERED,

Judge Katharine Samson
United States Bankruptcy Judge
Date Signed: May 2, 2014

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE: MICHAEL LEE POL**                    **CASE NO. 13-51168-KMS**

**DEBTOR**                                    **CHAPTER 7**

### MEMORANDUM OPINION AND ORDER DENYING RELIEF FROM THE AUTOMATIC STAY

This matter came before the Court on the Joint Motion for Relief from the Automatic Stay to Permit Trafficking Litigations to Proceed in Non-Bankruptcy Forums (the "Motion"), (Dkt. No. 53), filed by the trafficking creditors ("Movants");[1] Creditor Signal International's Joinder in the Joint Motion for Relief from Automatic Stay to Permit Trafficking Litigations to Proceed in Non-Bankruptcy Forums ("Joinder"), (Dkt. No. 58), filed by Signal International, LLC ("Signal"); the Response to Joint Motion for Relief from the Automatic Stay, (Dkt. No. 74), filed by the Debtor, Michael L. Pol ("Pol"); Creditor Signal International's Reply to Debtor's Response to Motions for Relief From Automatic Stay to Permit Trafficking Litigations to Proceed in Non-Bankruptcy Forums, (Dkt. No. 77), filed by Signal; and the Supplemental Response to Joint Motion for Relief from the Automatic Stay, (Dkt. No. 83), filed by Pol.

A hearing was held on the Motion on November 14, 2013. After discussion with the Court concerning the most efficient way to proceed, counsel for Signal and the Movants

---

[1] The Movants include at least 230 unsecured creditors with unliquidated claims against the Debtor as set out in the motion and exhibit attached thereto. For a list of the Movants, *see* Dkt No. 53, Exh. A.

suggested suspending the Motion to afford them additional time to continue discovery and determine whether they had grounds to bring a non-dischargeability action under 11 U.S.C. § 727. The original deadline to file an objection to discharge under § 727 was September 16, 2013, but the Court granted several extensions based on counsel's representations that they required additional time to search through Pol's financial records and accounts. (*see* Dkt. Nos. 8, 26, 44, 73). Counsel for the Movants and Signal agreed that the most efficient sequence of events would be to first determine whether they had sufficient grounds to file a § 727 action; then, if necessary, allow the Court to rule on the Motion; and, if stay relief was not granted, to proceed with non-dischargeability actions under 11 U.S.C. § 523. (*See* Nov. 14, 2013 Rec. at 9:58 a.m.–10:08 a.m.). Accordingly, the Court determined that ruling on the Motion should be stayed until after the deadline for filing an objection to discharge under § 727. (Dkt. No. 95). The Court also stayed the deadline for filing non-dischargeability actions under 11 U.S.C. § 523 until either a determination on the Motion or further order of the Court. (Dkt. No. 89). After the November 14 hearing, the Movants and Signal continued to engage in significant discovery of Pol's financial records[2] and, on December 12, 2013, they requested a 30-day extension of the deadline to file an objection to discharge under § 727 from December 24, 2013 to January 24, 2014. (Dkt. No. 97). The Court granted the motion, (Dkt. No. 107), but no objection to discharge was filed.

At the November 14 hearing, the Court also instructed the parties to brief the issue of the collateral estoppel effect of federal court default judgments on dischargeability actions. (Dkt. No. 95). The Movants submitted their Supplemental Brief of Trafficking Creditors in Support of Relief from the Automatic Stay on December 19, 2013. (Dkt. No. 106). Pol filed his Response to

---

[2] Those discovery efforts included 2004 examinations of Pol and his ex-wife, where the Movants and Signal requested and received numerous financial documents and records related to both Pol and his defunct S Corporation—Global Resources, Inc.—and 2004 examinations of bank records and subsequent subpoenas served on 10 separate banks. (Dkt. No. 97 at 2–11). Pol assisted the Movants and Signal in obtaining his records by signing a notarized release allowing them to obtain his bank records from his account in Dubai. (*Id.* at 9 ¶ 12).

Supplemental Brief of Trafficking Creditors on January 15, 2014, (Dkt. No. 114), and the Movants filed their Reply of Trafficking Creditors to Debtor's Response to Supplemental Brief of Trafficking Creditors on January 29, 2014. (Dkt. No. 115). A status conference was held on February 27, 2014, and the Court took the Motion under advisement. (Dkt. No. 118). After considering the pleadings and attachments thereto; the supplemental briefs; the arguments of counsel; and the record, the Court finds that the Motion should be denied and states the following:

## I.   JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A) & (G). This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.[3]

## II.   FINDINGS OF FACT

The Movants have initiated 11 non-bankruptcy proceedings against Pol, Global Resources, Inc.,[4] Signal, and several other defendants and claim that they intend to initiate more actions on behalf of at least 32 creditors if relief is granted. (Dkt. No. 53 at Exh. A [listed as "unfiled actions"]). Each action contains several plaintiffs and is named after one lead plaintiff. The actions are: *David v. Signal International*, No. 2:08-cv-01220-SM-DEK (E.D. La. March 7, 2008), which includes 12 of the Movants as plaintiffs; *Devassy v. Signal International*, No. 2:13-cv-06221-SM-DEK (E.D. La. Oct. 23, 2013), which includes 13 of the Movants as plaintiffs; *Achari v. Signal International*, No. 2:13-cv-06218-SM-DEK (E.D. La. Oct. 23, 2013), which

---

[3] Rule 7052 is applicable in contested matters via Federal Rule of Bankruptcy Procedure 9014.

[4] According to Pol's schedules, Global Resources, Inc. is Pol's now-defunct S Corporation. (Dkt. No. 3 at 31). Pol was the president and sole stockholder of Global Resources, which operated from 1998 to 2006. (*Id.*)

includes 47 Movants as plaintiffs; *Chakkiyattil v. Signal International*, No. 2:13-cv-06219-SM-DEK (E.D. La. Oct. 23, 2013), which includes 28 Movants as plaintiffs; *Joseph v. Signal International*, No. 1:13-cv-00324-RC-ZJH (E.D. Tex. May 21, 2013), which includes 44 Movants as plaintiffs; *Kambala v. Signal International*, No. 1:13-cv-00498-RC-ZJH (E.D. Tex. Aug. 7, 2013), which includes 19 Movants as plaintiffs; *Krishnakutty v. Signal International*, No. 2:13-cv-06220-SM-DEK (E.D. La. Oct. 23, 2013), which includes 2 Movants as plaintiffs; *Marimuthu v. Signal International*, No. 1:13-cv-00499-MAC-ZJH (E.D. Tex. Aug. 7, 2013), which includes 10 Movants as plaintiffs; *Meganathan v. Signal International*, No. 1:13-cv-00497-MAC-ZJH (E.D. Tex. Aug. 7, 2013), which includes 4 Movants as plaintiffs; *Samuel v. Signal International*, No. 1:13-cv-00323-MAC-ZJH (E.D. Tex. May 21, 2013), which includes 17 Movants as plaintiffs; and *Singh v. Signal International*, No. 2:14-cv-00732-SM-DEK (E.D. La. Apr. 2, 2014), which includes 2 Movants as plaintiffs. (Dkt. No. 53 at Exh. A).

These cases span two different district courts in two different states: the Eastern District of Texas and the Eastern District of Louisiana. (*Id.*). Pol resides in Biloxi, Mississippi. (Dkt. No. 1 at 1). The Movants claim they all "hold valid claims against Pol," and, joined by Signal,[5] they request blanket modification of the stay to proceed against Pol in the existing district court actions and to file additional actions naming him as a defendant. (Dkt. No. 53 at 1). The non-bankruptcy actions fall into three categories: pre-petition, post-petition, and unfiled suits.

## A.    Pre-Petition Suits: *David, Achari, Joseph*, and *Samuel*

Pol filed for protection under Chapter 7 of the Bankruptcy Code[6] on June 13, 2013. (Dkt. No. 1). Four of the non-bankruptcy cases were filed pre-petition. The *David* action was the first,

---

[5] Signal alleges it has cross-claims against Pol in *David*, and that it intends to assert similar cross-claims in all of the other non-bankruptcy actions if relief is granted. (Dkt. No. 58 at 2 ¶¶ 4, 5).

[6] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless noted otherwise.

and was filed in the Eastern District of Louisiana on March 7, 2008. *Achari* was filed in the Southern District of Mississippi on May 21, 2013, but was subsequently transferred to the Eastern District of Louisiana and consolidated with three other cases filed post-petition. *Joseph* and *Samuel* were filed in the Eastern District of Texas on May 21, 2013. Pol is still a named defendant in all of these actions except for *Achari*.[7]

**B.      Post-Petition Suits: *Chakkiyattil, Devassy, Kambala, Krishnakutty, Marimuthu, Maganathan*, and *Singh***

The remaining non-bankruptcy suits were filed post-petition. *Chakkiyattil* and *Krishnakutty* were filed in the Southern District of Mississippi on August 7, 2013, transferred to the Eastern District of Louisiana, and consolidated with *Achari*. *Devassy* was filed in the Southern District of Mississippi on August 14, 2013, before being consolidated with *Achari* and transferred to the Eastern District of Louisiana. *Kambala, Marimuthu*, and *Meganathan* were filed in the Eastern District of Texas on August 7, 2013. *Singh* was filed in the Southern District of Mississippi on October 15, 2013, and was transferred to the Eastern District of Louisiana on March 31, 2014. Pol remains a named defendant in the *Kambala* and *Meganathan* actions, though the amended complaint in *Kambala* purportedly removed him as a named defendant.[8]

**C.      Unfiled Suits**

Finally, the Movants request modification of the automatic stay to file suit(s) against Pol in district court on behalf of at least 32 Movants.[9] It is unclear whether the putative plaintiffs

---

[7] In *Achari*, the plaintiffs filed a motion dismissing the claims against Pol in the amended complaint in light of his bankruptcy and out of concern over violating the automatic stay on August 1, 2013. (*Achari,* No. 2:13-cv-06218-SM-DEK, Dkt. No. 30). The motion was granted on September 16, 2013 (*Id.* at Dkt. No. 32). Additionally, though Pol remains a named defendant, the *David* plaintiffs have stayed their claims against him in their fifth amended complaint pending a decision on stay modification. (*David,* 2:08-cv-01220-SM-DEK, at Dkt. No. 1592, 9 n.1).

[8] (Dkt. No. 53 at 15).

[9] (*Id.* at 1). There were 32 named Movants who had yet to file actions against Pol as of October 18, 2013. (*Id.* at Exh. A, 6). That number may have increased since then.

intend to file a single action or multiple actions and where they intend to file.

### III.   CONCLUSIONS OF LAW

The Movants, joined by Signal, moved for relief from the automatic stay to pursue their claims and Signal's cross-claims against Pol in the district courts in which those actions are pending and to file new actions against Pol. In addition to consideration of the Movants' Motion for relief and Signal's Joinder, the Court also invited the parties to brief the issue of whether federal default judgments would have preclusive effect with regard to future non-dischargeability actions in this Court. (Dkt. No. 95). The Court now considers each issue in turn.

### A.    The Preclusive Effect of District Court Default Judgments

Pol has repeatedly asserted through counsel that he is unable to defend himself in the 11 pending non-bankruptcy actions[10]; an assertion that is supported by his schedules and the copious discovery that Movants and Signal have conducted regarding his financial affairs. Thus, if relief is granted, the Movants and Signal would obtain unopposed judgments against Pol, which they intend to use as bases for non-dischargeability actions in this Court. As a result, the potential preclusive effect of these unopposed judgments weighs heavily in this Court's consideration of judicial economy. Therefore, the Court invited the parties to brief the preclusive effect of federal default judgments in subsequent dischargeability actions. Should the judgments, if any, obtained in the non-bankruptcy actions not have preclusive effect, the Movants would be forced to re-litigate at least some of their claims in this Court. By contrast, if the judgments do have preclusive effect, no such duplicative effort will be required although the Movants and Signal would still be required to file § 523 actions for the purposes of having their judgments declared non-dischargeable.

---

[10] (Dkt. Nos. 74 at 1; 114 at 3 ¶ 1; Nov. 14, 2013 Rec. at 10:07 a.m.).

The doctrine of collateral estoppel is applicable in non-dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). And the preclusive effect of a federal court judgment is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Jackson v. FIE Corp.*, 302 F.3d 515, 529 n.58 (5th Cir. 2002). In the Fifth Circuit, if "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision," collateral estoppel operates to prevent re-litigation of that issue. *Bradberry v. Jefferson Cnty., Tex.,* 732 F.3d 540, 548 (5th Cir. 2013) (internal citation and quotation marks omitted). Pol argues that he is unable to defend the pending non-bankruptcy proceedings against him, much less any future claims that may be brought against him. (Dkt. No. 114 at 3 ¶ 1). Thus, the Movants are likely to obtain default judgments against him in the pending non-bankruptcy actions if relief from the stay is granted.

Under federal law, normally a default judgment "will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.'" *Shephard v. O'Quinn, (In re O'Quinn),* 401 B.R. 739, 743 (M.D.N.C. 2009) (*quoting* Restatement (Second) of Judgments § 27 cmt. e (1982)). The exception to this general rule is when "a party actively participates in litigation prior to the entry of a default judgment." *Id.* at 743–44. Those cases where courts have applied this exception normally involve "extensive participation, abuse of process, or a combination thereof in the prior proceeding." *Id.* at 744. Pol claims he has not participated in any of the 11 non-bankruptcy actions against him, except the *David* action, where he responded and participated until he ran out of funds. (Dkt. No. 114 at 3 ¶ 2). But it does not appear that Pol has participated enough in the *David* action to trigger the exception.[11] His counsel filed a motion to

---

[11] Under certain circumstances, a court may take judicial notice of publicly filed documents, particularly in related proceedings, for limited purposes. *See Giles v. City of Dallas,* 539 Fed. App'x 537, 542 n.1 (5th Cir. 2013) (a court

withdraw in June of 2010 that was granted in July of 2010,[12] and it does not appear that Pol has participated meaningfully in the merits of that case since. In fact, the *David* plaintiffs successfully moved for entry of default against Pol for his failure to answer their third amended complaint.[13] Pol moved, *pro se*, to have that entry of default set aside on February 1, 2013.[14] The Plaintiffs filed a response in opposition to his motion on March 18, 2013,[15] arguing that "[f]or nearly three years, Defendant Michael Pol ("Mr. Pol") has refused to participate meaningfully in this civil action." (*Id.* at Dkt. No. 1298, 1). Yet, in this Court, the Movants—which include the *David* plaintiffs—argue that Pol "participated extensively in the *David* action, filing pleadings, engaging in discovery and ultimately prevailing in denying certification of a class comprised of the Trafficking Creditors and those similarly situated." (Dkt. No. 106 at 11–12). But merits discovery did not begin in *David* until August of 2012,[16] thus any discovery Pol participated in was limited to issues related to venue and jurisdiction or class certification. And Pol apparently

---

may take judicial notice of a document in another proceeding, but not for the truth of the matter asserted in the document); *Airport Blvd Apartments, Ltd. v. NE 40 Partners (In re NE 40 Partners)*, 411 B.R. 352, 362 n.7 (Bankr. S.D. Tex. 2009) (a court may take judicial notice of the record in prior related proceedings and draw reasonable references therefrom); *Allstate Ins. Co. v. Estate of Robert M. Levesque*, No. 8:08-cv-2253-T-33EAJ, 2010 WL 2978037, at *1 (M.D. Fla. July 19, 2010) (court may take judicial notice of records that are publicly available).

[12] (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 748).

[13] (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1266). The *David* plaintiffs have since filed a fourth and fifth amended complaint, neither of which Pol has answered. (*Id.* at Dkt. Nos. 1545, 1592).

[14] (*Id.* at Dkt. No. 1285). Pol's motion consisted of a single paragraph, citing "oversight and inadvertence" as well as the fact that the "Third Amended Complaint consist[s] of 82 pages and 422 separate paragraphs" as the reasons for his failure to file a timely response. (*Id.*).

[15] Pol's motion to set aside the default was granted and he was ordered to submit an answer to the third amended response by June 14, 2013. (*Id.* at Dkt. No. 1342). Pol filed for relief under Chapter 7 on June 13, 2013 and never filed an answer to the third amended complaint.

[16] (*Id.* at Dkt. No. 1298, 6).

never filed an individual response to the *David* plaintiffs' motion for class certification,[17] thus his efforts did not contribute to the *David* defendants' success on that motion.

Nevertheless, the Movants argue that they could obtain judgments against Pol with preclusive effect in one of three ways. (Dkt. No. 106 at 7–17). First, they argue that they could obtain unopposed summary judgments against Pol. (*Id.* at 7–9). Next, they argue that they could obtain default judgments with preclusive effect. (*Id.* at 9–16). Finally, they argue that judgments against Pol's privies could result in judgments against Pol with preclusive effect. (*Id.* at 16–17).

### 1.    Uncontested Default Judgments

First, the Movants argue that an uncontested summary judgment is entitled to collateral estoppel effect. (*Id.* at 8). Essentially, without using the term offensive collateral estoppel,[18] the Movants argue that—based on the discovery already conducted in *David*—they could obtain a judgment against Pol and then assert offensive collateral estoppel to prevent Pol from re-litigating the issues in *David* in the other district courts against the other Movants so that they could obtain summary judgments in those courts with preclusive effect in this Court. Offensive collateral estoppel requires that: (1) the issue was actually litigated in the previous suit; (2) the issue was actually and necessarily determined by a court with jurisdiction; and (3) that preclusion in the second trial would not be unfair. 2-13 Robert Shields, et al., *Toxic Torts Guide* § 13.07[3] (Sally A. Aiello rev. 2014). Federal judges have been reluctant to use offensive collateral estoppel due to difficulties in determining whether the issues are identical and whether they were

---

[17] *See David, et. al v. Signal, et. al*, No. 2:08-cv-01220-SM-DEK, Dkt. No. 1117, at 1 n.2 (E.D. La. January 4, 2012) ("Defendants J & M Associates, Inc. of Mississippi, J & M Marine & Industrial, LLC, and Billy Wilks adopt Signal's and the Burnett Defendants' arguments in opposition to class certification . . . . Defendant Kurella Rao has indicated that he will be a "passive" defendant."); (*David*, No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1002) (stating that the following parties have filed submissions pertaining to the motion for class certification: Plaintiffs, Signal, Dewan Defendants, Burnett Defendants, J&M Associates, et. al.).

[18] "Offensive collateral estoppel occurs when a plaintiff attempts to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party." 2-13 Robert Shields, et al., *Toxic Torts Guide* § 13.07[1] (Sally A. Aiello rev. 2014).

actually and necessarily decided in the previous action. *Id. See also Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 337 (5th Cir. 1982) (declining to apply offensive collateral estoppel where the court could not determine whether the issue was identical and actually litigated from the generic verdict entered in the prior action). Based on Pol's minimal participation in *David*, the Court finds it would be difficult at best to meet the actually litigated requirement for collateral estoppel. Moreover, the denial of class certification in this case indicates that the claims of the Movants are not necessarily identical.

The Movants cite several cases in support of their position, including *United States v. Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983); *Chao v. Johnson* (*In re Johnson*), No. 05-3583, 2007 WL 646376, at *3–4 (S.D. Tex Feb. 26, 2007); *Baker v. Bank of N.Y. Mellon as Trustee* (*In re Baker*), No. 11-1131, 2013 WL 5530014, at *8–9 (Bankr. D.N.M. Oct. 4, 2013); and *Fairdale Area Cmty. Ministries, Inc. v. Hollingsworth* (*In re Hollingsworth*), 441 B.R. 833, 838–39 (Bankr. W.D. Ky. 2010). (Dkt. No. 106 at 8, ¶ 20). But, in each of the cases cited the party opposing the application of collateral estoppel actively participated—or at least answered the complaint—prior to their failure to answer the motion for summary judgment. In *Gottheiner*, the party had actively participated in the action for over sixteen months before choosing not to defend the motion for summary judgment and the court emphasized the fact that "Gottheiner did not simply give up from the outset" as part of its rationale. *Gottheiner*, 703 F.2d at 1140. In *Johnson*, the party had answered the complaint and participated in discovery, but his attorney failed to respond to the motion to dismiss. *Johnson,* 2007 WL 646376, at *2. Indeed, the court in *Johnson* analogized an unanswered motion for summary judgment to a post-answer default judgment. *Id.* at *3. In *Baker,* the parties answered the underlying foreclosure complaint, but did not defend the motion for summary judgment through no fault of their own. *Baker,* 2013 WL

5530014, at *2, 3. And in *Hollingsworth*, the party himself initiated the state-court action and participated in discovery. *Hollingsworth*, 441 B.R. at 838. Further, none of the above-cited cases discuss the use of discovery in another case to preclude re-litigation of issues presented in the pending case.

In this case, Pol has only minimally participated in *David*: he never filed an answer to the third, fourth, or fifth amended complaints,[19] and he does not appear to have engaged in merits discovery. Moreover, he has not even filed an answer in any of the other pending actions, most of which were filed post-petition in violation of the automatic stay.[20] Despite the Movants' arguments, the Court finds it unlikely that a district court would skip directly to granting an unopposed motion for summary judgment where the defendant has not even filed an answer to the complaint. Rather, it is far more likely the Court would grant a motion for default judgment after the clerk's entry of default.

### 2.   Default Judgments with Preclusive Effect

Next, the Movants argue that any default judgment they may obtain in the non-bankruptcy actions would have preclusive effect in this Court. (Dkt. No. 106 at 9). Though they concede that "more standard default judgments typically cannot be the basis for collateral estoppel," (Dkt. No. 106 at 10), the Movants insist that any default they obtain will not be standard because of Pol's extensive participation in *David*. (*Id.* at 11). But, as discussed above,

---

[19] The *David* plaintiffs filed their fourth amended complaint on March 6, 2014, (*David*, 2:08-cv-01220-SM-DEK, at Dkt. No. 1545), and their fifth amended complaint was filed on April 11, 2014. (*Id.* at Dkt. No. 1592).

[20] Section 362 specifically states that the automatic stay "operates as a stay, applicable to all entities, of—(1) the *commencement* or continuation, including the issuance or employment of process, of a judicial . . . action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1) (emphasis added). Committing an act prohibited by § 362 constitutes a violation of the automatic stay, regardless of whether the actor had knowledge of the filing of the petition. *Jackson v. Priority Trust Servs of Mississippi,* (*In re Jackson*), 392 B.R. 666, 671 (Bankr. S.D. Miss. 2008) (internal citations omitted). Thus, to the extent actions were filed against Pol post-petition, those actions were commenced against him in violation of the automatic stay. Pol remains a named defendant in the *Meganathan* action as well as the *Kambala* action, though the amended complaint in *Kambala* purportedly removes him as a defendant due to the pending bankruptcy.

Pol's participation in *David* was not extensive. He never answered the third, fourth, or fifth amended complaints; his deposition was limited to jurisdiction and venue questions[21]; and the Movants themselves have argued that he "has refused to participate meaningfully in [*David*]" since his attorneys withdrew in 2010. (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1298, 1). Thus, the Court finds it unlikely the Movants would be able to obtain anything other than a standard default judgment against Pol in *David*.

### 3.    Contested Judgments Against Pol's Privies

Finally, the Movants argue that Pol could be precluded from arguing dischargeability based on contested judgments they may obtain against his agents or co-venturers in *David*. (Dkt. No. 106 at 16–17). They argue that the third amended complaint—which Pol never answered— alleges that some of Pol's co-defendants played integral roles in the same scheme Pol was allegedly involved in: luring the *David* plaintiffs to the United States and the employ of Signal. Thus, the Movants claim that these parties may be considered privies of Pol for issue preclusion purposes. But the *Dillard* case they rely on states that "the test for privity among the parties is met when [they] stand in an employer-employee relationship"; "a principal-agent relationship satisfies the privity requirement . . . where the claims alleged are within the scope of the agency relationship"; and "privity exists between a party and his attorneys." *Dillard v. Bank of Am., N.A.*, No. 13-2253-JDT-dkv, 2013 WL 4590541, at *7 (W.D. Tenn. Aug. 28, 2013) (internal citations and quotation marks omitted). The Movants do not set forth any facts that would indicate any of these tests for privity are met. Moreover, it is unclear—and the Movants fail to articulate—how this alleged joint-venture would meet any of the § 523 requirements for non-dischargeability in this Court. In fact, they readily concede that "additional analysis and factual

---

[21] (*David,* No. 2:08-cv-01220-SM-DEK, Dkt. No. 173 at Exh. 57, 5) ("Right, our questions have been limited to matters related to jurisdiction and venue, that's correct.").

development would be required to determine whether issue preclusion were appropriate on this basis." (Dkt. No. 106 at 17). Thus, the Court finds it unlikely that any judgments obtained against Pol's alleged privies would have preclusive effect in a non-dischargeability action before this Court. Accordingly, the Court finds it unlikely the Movants and Signal will be able to obtain judgments against Pol with preclusive effect in this Court and turns now to their arguments for relief from the stay.

**B.      Section 362(d)(1)**

The automatic stay is a fundamental protection for debtors under the Code. It is designed to give them a "breathing spell" from creditors by ceasing all collection efforts. S. Rep. 95-989, 54 (1978). This "breathing spell" "permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.* at 54–55. The automatic stay serves three main purposes: (1) "[t]o shield the debtor from creditor harassment and a multitude of litigation in a variety of forums;" (2) "[t]o prevent piecemeal dismemberment of the debtor's property by creditors; and" (3) "[t]o freeze rights as of the petition date." Ginsberg & Martin on Bankruptcy § 3.05[A] (2014). The Fifth Circuit has recognized the broad reach of the automatic stay "and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity." *Bonneville Power Admin. v. Mirant Corp.* (*In re Mirant Corp.*)*,* 440 F.3d 238, 251 (5th Cir. 2006) (*citing Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005)). The discretion of the bankruptcy court is broad when deciding whether to modify the automatic stay. *Bustamante v. Cueva (In re Cueva)*, 371 F.3d 232, 236 (5th Cir. 2004). The Movants, joined by Signal, seek relief from the automatic stay under 11 U.S.C. § 362(d)(1),[22] which states: "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from

---

[22] (Dkt Nos. 53 at 1; 58 at 1 ¶ 1).

the stay . . . (1) for cause . . . ." 11 U.S.C. § 362(d)(1).

"Cause" is not defined in the Code, apart from the example given in § 362(d)(1), which indicates that "lack of adequate protection" constitutes cause. *Id.* Allowing an action to proceed in another tribunal may also constitute "cause" because often it will "be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re The Consolidated FGH Liquidating Trust*, 419 B.R. 636, 647 (Bankr. S.D. Miss. 2009) (*quoting* H.R. Rep. No. 595, 95th Cong, 1st Sess., 341 (1977)). But, while courts may be more inclined to allow a single action in another forum to proceed, careful consideration is required before modifying the stay to allow several pending actions to continue in several different fora. For example, in *Commercial Union Ins. Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 31 B.R. 965 (Bankr. S.D.N.Y. 1983), one of the debtor's insurers sought relief from the stay to pursue a declaratory judgment action against the debtor to resolve a dispute over policy coverage. The debtor had coverage disputes with several of its insurers and the bankruptcy court denied relief, concluding that all of the issues concerning the debtor's various insurers should be embraced in a single forum. *Id.* at 972. The district court affirmed, holding that "it is preferable to resolve all these issues in a single forum; and that piecemeal adjudication of these issues in different forums would be counterproductive . . . ." *Id.* at 975.

The Movants and Signal cite several cases in support of their joint motion to modify the stay. (*See generally* Dkt. Nos. 53, 58). But they fail to cite a single case allowing modification of the stay for the movant to pursue multiple actions against the debtor in multiple fora. (*Id.*). Unlike the movants in the cases they cite, the Movants here seek to continue 11 separate causes

of action pending in two separate states, and they also seek relief to file new actions against Pol. Their burden of showing cause exists to grant the requested blanket relief is somewhat greater than in cases where the moving party is seeking relief to continue a single non-bankruptcy action.

Courts within the Fifth Circuit have embraced the 12 factors enumerated in *Sonnax Indus., Inc. v. Tri Components Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2nd Cir. 1990) (*citing In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)), when deciding whether cause exists to grant relief from the automatic stay. Those factors include:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
12. The impact of the stay on the parties and the balance of the hurt.

*Consolidated FHG,* 419 B.R. at 647–48 (*citing Sonnax,* 907 F.2d at 1286). The factors need not be assigned equal weight, and courts need only consider factors relevant to the particular case. *In re United States Brass Corp.,* 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) (*citing In re Keene Corp.,* 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)). The Movants, joined by Signal, argue that all of the factors relevant to this case, specifically numbers 1, 2, 6, 10, 11, and 12, favor their request for

relief from the automatic stay. (Dkt. No. 53 at 5). The Court finds that the 9th *Sonnax* factor is also applicable to this case and considers each factor in turn.

### 1.    Factor 1: Resolution of issues

The Movants, joined by Signal, argue that the first *Sonnax* factor—resolution of the underlying issues—favors modification of the stay because the district courts would then be free to resolve many of the issues relevant to their claims against Pol. (Dkt. No. 53 at 10). Specifically, they claim that the threshold question of whether Pol is subject to claims brought under certain federal acts may be resolved on summary judgment: if Pol is not subject to claims under those federal acts, the Movants' claims in this Court would be rendered moot, and if he is, the claims should be before the relevant district courts rather than this Court. (*Id.* at 11).

But, it is not clear that final resolution of the issues regarding liability and liquidation of the claims asserted against Pol can be achieved in the district courts. Pol asserts that he is unable to defend himself in the pending non-bankruptcy actions. In fact, a review of his schedules indicates that Pol's attorneys in the *David* action are his largest liquidated, unsecured creditors.[23] And the exhaustive discovery of Pol's finances in this case has not uncovered any substantial assets not listed in his schedules. Moreover, Pol has not answered any of the complaints in the non-bankruptcy cases aside from the first amended complaint[24] in *David*, (Dkt. No. 114 at 2), and he is no longer participating in *David*. Thus, it is extremely unlikely that the Movants and Signal will be able to obtain contested judgments against Pol in any of the pending non-

---

[23] (Dkt. No. 3 at 11). Pol's attorneys moved to withdraw as counsel for Pol and his S Corporation, Global Resources, Inc., in June of 2010. (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 734). In their motion, Pol's attorneys cite Global Resource's failure "to fulfill its obligation to counsel of record" regarding services rendered as cause to withdraw. (*Id.*). The motion to withdraw was granted in July of 2010. (*Id.* at Dkt. No. 748).

[24] The *David* plaintiffs filed a fifth amended complaint on April 11, 2014. (*Id.* at Dkt. No. 1592).

bankruptcy actions. And as discussed above,[25] if judgments obtained against Pol do not have preclusive effect in this Court, the Movants and Signal will be forced to re-litigate their claims against Pol within the context of a § 523 action. Further, even if the Movants and Signal obtain a contested judgment in one or more of the district court actions, they must return to this Court and have it declared non-dischargeable. Accordingly, the Court finds that the first *Sonnax* factor does not favor modification of the automatic stay and now turns to the second factor.

### 2.      Factor 2: Lack of any connection to or interference with the bankruptcy case

Next, the Movants, joined by Signal, argue that the second *Sonnax* factor—the lack of any connection to or interference with the bankruptcy case—favors modification of the stay because the non-bankruptcy actions require the determination of complex, non-bankruptcy law issues, which are best decided by the district courts and have nothing to do with other creditors' claims. (*Id.* at 9). Indeed, the Movants argue that the complexity of the non-bankruptcy actions implicates either mandatory or permissive withdrawal of the bankruptcy reference. (*Id.* at 9–10). But this reasoning merely repeats the Movants' argument that a district court, rather than this Court, should hear their claims against Pol.

The legislative history of the 11 U.S.C. § 362 contains examples of actions that are not connected to and do not interfere with the pending bankruptcy case.

> For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case . . . . A probate proceeding in which the debtor is an executor or administrator of another's estate usually will not be related to the bankruptcy case . . . . Generally, proceedings in which the debtor is a fiduciary, or involving post-petition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors.

*Cement Antitrust Litig. v. Penn-Dixie Indus., Inc.* (*In re Penn-Dixie Indus., Inc.*), 6 B.R. 832, 835 (Bankr. S.D.N.Y. 1980) (*quoting* H.R. No. 95-595, 95th Cong., 1st Sess. (1977) 343–44).

---

[25] *See* discussion *supra* Part III.A.

Importantly, in each of the examples the party moving for relief is not a creditor of the debtor for the purposes of the non-bankruptcy action. In fact, the rationale behind finding cause to modify the stay under these circumstances is that these scenarios "bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *Id.* Thus, when a creditor of the debtor, acting in that capacity, seeks to proceed in a suit that would impact property of the estate, the action is connected with the pending bankruptcy case. *Id.* at 836.

The Movants, joined by Signal, seek to proceed in their capacity as creditors of Pol in the pending non-bankruptcy actions against him. The pending actions are therefore connected to the bankruptcy estate. Further, "even slight interference with the administration [of the estate] may be enough to preclude relief." *In re UTEX Commc'ns Corp.,* 457 B.R. 549, 570 (Bankr. W.D. Tex. 2011) (*quoting In re United States Brass Corp.,* 173 B.R. at 1006). To enforce any judgments the Movants and Signal may obtain against Pol in the non-bankruptcy actions, they must prevail in a non-dischargeability action before this Court. Modifying the stay to allow these non-bankruptcy actions to proceed will delay such a determination for years[26] and the parties may still be forced to re-litigate their claims against Pol in this Court if their judgments do not have preclusive effect. This lengthy delay exceeds the minimum threshold of "slight interference" and impairs the administration of the estate. Finally, the automatic stay is designed to give debtors a "breathing spell" from creditors. *Penn-Dixie,* 6 B.R. at 837 (*quoting* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977) 340). Modifying the stay to allow the pending non-bankruptcy proceedings to continue and allow new actions to be filed against Pol would cut strongly against this policy.

Last, even if the bankruptcy reference is withdrawn, the cases would be heard in the

---

[26] *David* has been pending for five years and has just been set for trial in 2015. (Dkt. No. 53 at 13). The only other case set for trial is *Joseph*, which is currently set for April of 2015.

District Court for the Southern District of Mississippi—a court that could hear both the bankruptcy claims and the underlying federal claims the Movants and Signal seek to pursue in other district courts. As a result, all of the claims against Pol would be embraced in a single forum. Efficiency and judicial economy favor this result. Accordingly, the Court finds that the second *Sonnax* factor disfavors modification in this case and turns now to the sixth and tenth factors.

### 3.       Factors 6 and 10: Judicial Economy

Third, the Movants cite judicial economy under the sixth and tenth *Sonnax* factors as their strongest argument for stay modification to proceed in the various district courts. Specifically, the Movants argue that Pol's conduct is central to their claims against the other defendants in the non-bankruptcy suits that have already commenced, thus the district courts hearing these cases will have to evaluate Pol's actions regardless of whether he is still a named defendant; the Movants will be forced to try the same facts twice—first against the other third-party defendants in district court and then against Pol here—if the stay is not modified; only those Movants who are victorious in district court intend to file non-dischargeability actions against Pol in this Court; and over 170[27] Movants would be forced to file non-dischargeability actions in this Court if stay relief is denied. (*Id.* at 6–7).

A decision to modify the stay "may be upheld on judicial economy grounds alone." *In re Young,* No. 06-80397-G3-7, 2006 WL 3088225, at *3 (Bankr. S.D. Tex. Oct. 20, 2006) (*citing In re United States Brass Corp.,* 176 B.R. at 13). But, quite contrary to the Movants' and Signal's assertions, the interests of judicial economy support denial of stay relief in this case. First, as

---

[27] The Movants argue that "over 170 plaintiffs in eleven separate actions" would have to file non-dischargeability complaints if relief is denied. (Dkt. No. 53 at 8). But the Court is unclear of the origin of this number as the Motion is filed on behalf of 230 individuals. (*See* Dkt. No. 53 at 1 n.1 and Exh. A).

stated above,[28] any successful parties in the non-bankruptcy actions will be forced to file a non-dischargeability action in this Court to enforce their judgments. Thus, the Movants cannot avoid at least minimal litigation of the issues related to dischargeability in this Court. Second, though denial of relief from the stay could result in the filing of over 170 separate non-dischargeability actions, if all of the claimants are successful in the non-bankruptcy actions, the result is the same. The Movants' argument that judicial economy favors modification of the stay to avoid this mass filing assumes that some of the Movants will be unsuccessful in their claims. If the Movants believe some of their claims would fail in district court, they could adjust their litigation strategy accordingly and chose not to file those non-dischargeability actions in this Court. Accordingly, the Court finds that the sixth and tenth *Sonnax* factors do not favor modification in this case and turns now to the eleventh factor.

### 4.    Factor 11: Progress of the non-bankruptcy court proceedings

Fourth, the Movants, joined by Signal, argue that the 11th *Sonnax* factor—the advanced progress of the non-bankruptcy cases—favors modification of the stay because some of the Movants have been litigating their claims against Pol for over five years. Tellingly, the Movants only mention *David*, which is in the last year of merits discovery and trial is set in that case for January 2015. But *David* is the only case that has progressed that far. The rest of the non-bankruptcy actions were filed in either May or August of 2013, only one other trial date has been set in *Joseph* for April of 2015, and Pol has not answered the complaints in any of those cases—including *Joseph*. In fact, *David* is the only case where Pol has even answered a complaint, and he only answered the first amended complaint, whereas the plaintiffs have just filed a fifth amended complaint.[29] And all of the early litigation in *David* centered on jurisdiction and venue

---

[28] *See* discussion *supra* Part III.1., at 16.

issues and the claimants' attempt at gaining class certification, which was denied in an opinion issued in January of 2012. (Dkt. No. 74 at 2–3). Indeed, merits discovery in the *David* action did not begin until August of 2012. (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1298, 6). The deadline for fact discovery in the *David* action was March 31, 2014, (Dkt. No. 53, Exh. 1, at 2 ¶ 10). But on April 22, 2014, the court granted Signal's motion to extend the deadline for it to produce electronically stored information to May 21, 2014. (*David,* No. 2:09-cv-01220-SM-DEK, at Dkt. No. 1599). Additionally, the *David* court granted an extension of discovery to take the deposition of certain witnesses located in India to August 15, 2014. (*Id.* at Dkt. No. 1602). The deadline for dispositive motions in *David* is currently July 21, 2014. (Dkt. No. 53, Exh. 1, at 2 ¶ 10). Thus, though the *David* action has been pending for five years, merits discovery began at the earliest in August of 2012. The rest of the non-bankruptcy actions have been pending for less than a year. Further, the Movants and Signal have conducted extensive discovery concerning Pol and his finances in the current bankruptcy proceeding and, as stated above,[30] this Court has granted several extensions of the deadline to file an objection to discharge or dischargeability at the Movants' and Signals' request as they pursued this discovery. (Dkt. Nos. 26, 44, 73, 107). A review of the docket in *David* indicates that Pol has not participated in merits discovery in that case and he has not participated in any way in the other pending cases. Thus, it is likely the Movants and Signal have obtained more discovery from him in the pending bankruptcy action than they did in the *David* action.

The Movants, joined by Signal, cite *In re Armstrong & Guy Law Office, LLC*, 2007 WL 4571152, at *4 (Bankr. S.D. Miss. Dec. 21, 2007) and *In re Marvin Johnson's Auto Serv.*, *Inc.*, 192 B.R. 1008 (Bankr. N.D. Ala. 1996) for support. But in *Armstrong*, the non-bankruptcy action

---

[29] (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1592).

[30] *See* discussion *supra*, at 2.

was set for trial before the bankruptcy petition was filed. In fact, the petition was filed a mere four days before the trial. *Armstrong*, 2007 WL 4571152, at *1. Thus, discovery was complete; all pre-trial motions had been heard; experts had been hired; *Daubert* motions had been filed; and the pre-trial order had already been completed. *Id.* at *4. All that remained was jury selection and the trial itself. *Id.* The facts of *Armstrong* are easily distinguishable from this case; none of the pending non-bankruptcy actions—even the *David* action—are on the precipice of trial. And in *Marvin*, the parties agreed "that if the stay is lifted the case [would] be tried in state court within the next six months"; that discovery would be completed after two depositions were taken; that the trial would be relatively simple, involving few witnesses; and that considerable preparation time was not required. *Marvin*, 192 B.R. at 1015. Again, *Marvin* is distinguishable from this case: the earliest trial date currently scheduled is January of 2015 for the *David* action; discovery is not yet complete in that action; the Movants and Signal argue that the trial will be complex and is scheduled to last one month; several witnesses will be involved; and extensive trial preparation is necessary.

Last, it is also important to note that the Movants and Signal are not merely requesting relief to pursue the *David* action or any other single existing action; they are seeking blanket relief to both pursue all 11 pending non-bankruptcy actions and to file an unspecified number of new actions against Pol. *Armstrong* and *Marvin* involved motions for relief to pursue a single non-bankruptcy action that was nearly ready for trial. The Movants and Signal seek relief to pursue more than 11 non-bankruptcy actions against the debtor, none of which are ready for trial. Accordingly, the Court finds that the eleventh *Sonnax* factor disfavors relief from the stay in this case and turns now to the 12th factor.

5.      **Factor 12: Balance of harm**

Finally, the Movants, joined by Signal, argue that the 12th *Sonnax* factor—the balance of harm—falls in their favor, largely because of the reasons described above. (Dkt. No. 53 at 13–14). In addition, the Movants emphasize that they would have to return to bankruptcy court and have any judgments obtained in the non-bankruptcy actions declared non-dischargeable in order to have any recourse against Pol, thus Pol is sufficiently protected. (*Id.* at 14). Further, they argue that Pol's litigation costs do not in and of themselves constitute a reason to deny stay relief and, in fact, litigation in bankruptcy court would likely result in higher legal costs because the parties would have to begin the litigation anew. (*Id.*at 14–15). Finally, in a footnote, the Movants, joined by Signal, blame Pol for the multitude of lawsuits filed against him in two separate fora, claiming they are "merely the logical consequence of [Pol's] successful opposition to class certification in the <u>David</u> Action." (*Id.* at 15 n. 6).

When evaluating the 12th *Sonnax* factor, courts balance the financial hardship of the movants against that of the debtor. *In re Curtis*, 40 B.R. at 806. The movant bears the burden of establishing a justification for imposing the cost of outside litigation on the debtor. Absent "some other justification, the court will not shift the financial burden from another party to the debtors. To do so would contravene the fundamental policy in favor of economic administration of debtors' estates." *Id.*

First, the Movants' assertion that Pol will enjoy the due process protections of two separate courts before they will be able to collect on any judgments against him is disingenuous given their position in this case. The Movants and Signal argue that they will be able to obtain unopposed judgments against Pol with preclusive effect in this Court. But Pol has already asserted that he is unable to defend himself in the pending non-bankruptcy actions. If the

Movants and Signal are correct, Pol will be saddled with non-dischargeable debt without being able to present his defenses in either forum. The Movants present the untenable argument that Pol could always defend himself on a *pro se* basis in these pending actions. (Dkt. No. 106 at 15 n.7). But they also emphasize the complexity of their claims against him as a reason this Court should not hear those claims. (Dkt. No. 53 at 2, 8, 9, 10, 15). And, setting aside the purported complexity of the claims asserted against him, the prospect of Pol defending himself without skilled counsel in at least 11 separate actions spread across two states—neither of which he resides in—is at best unreasonable. Further, Pol has counsel in his bankruptcy case and that counsel has represented to this Court that he is willing to defend Pol against any non-dischargeability actions brought in this court on a *pro bono* basis if necessary. And the adversary proceedings could potentially be consolidated for the purposes of discovery. Thus, it appears the cost to Pol for defending himself in this forum would be greatly reduced as compared to the cost of defending himself in at least two separate out-of-state fora. Indeed, at least one bankruptcy court has found that "[r]equiring the debtor to go out of state to defend his position and forcing him (probably) to retain new counsel, makes the [12th *Sonnax* factor] go decidedly in favor of the debtor." *In re Cook,* 232 B.R. 554, 557 (Bankr. D. Conn. 1999). Further, the Movants and Signal would be spared the burden and expense of having to litigate against Pol in the non-bankruptcy actions because both liability and dischargeability would be determined in the same adversary.

Next, as noted previously,[31] the automatic stay serves at least two important goals: preventing diminution or dissipation of the bankruptcy estate and allowing the debtor to avoid the multiplicity of claims arising against the estate in different fora. *In re Tower Petroleum Co.,* 48 B.R. 182, 185 (Bankr. W.D. Okla. 1985). The Movants, joined by Signal, cite *Santa Clara*

---

[31] *See* Discussion *supra* III.B., at 13.

*Cnty Fair Ass'n v. Sanders*, (*In re Santa Clara Cnty Fair Ass'n, Inc.*), 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995), for support of their assertion that litigation costs alone do not compel denial of stay relief. (Dkt. No. 53 at 14). But *Santa Clara* addressed only the first goal—preventing diminution or dissipation of the estate—because it involved a motion for relief from the stay to pursue a single pre-petition suit, rendering the second goal inapplicable. *Santa Clara*, 180 B.R. at 565. And the non-bankruptcy suit was filed in the district court for the district in which the bankruptcy court was located. *Id.* Thus, *Santa Clara* supports the position that the cost of litigating a single non-bankruptcy case alone generally cannot support maintaining the automatic stay when the concern is preventing diminution of estate assets and the forum for the non-bankruptcy proceeding is the district court in which the bankruptcy court sits. But it does not support the position of the Movants and Signal, which implicates the second goal of the automatic stay; allowing the debtor to avoid a multiplicity of claims arising against him in different fora.

Finally, the Movants and Signal blame the filing of 11 separate non-bankruptcy actions in two separate states on Pol's successful defense of their class certification efforts in *David*. But, as discussed above,[32] it does not appear from the opinion issued by the court denying class certification or the docket in *David* that Pol filed an individual response opposing the motion for class certification. Thus, it appears that Pol was not directly involved in the successful defense of the class certification action. Regardless, though the denial of class certification may naturally result in the filing of separate lawsuits, it does not necessitate the filing of those suits in separate states. Indeed, through Signal's efforts, several of the pending non-bankruptcy cases have been

---

[32] *See* discussion *supra* Part III.A., at 8 n.17.

consolidated into the same forum.[33] Accordingly, the Court finds that the 12th *Sonnax* factor does not favor modification of the stay in this case and turns now to the 9th and final factor.

### 6.  Factor 9: Success resulting in an avoidable lien under § 522(f)

Last, though the parties have not raised the ninth *Sonnax* factor—whether success in the foreign proceedings would result in judicial liens avoidable under § 522(f)—the Court finds it applicable in this case. The focus of the ninth factor is whether granting relief would be futile. *See, e.g.*, *Builders and Remodelers, Inc. v. Hanson*, 20 B.R. 440, 443 (Bankr. D. Minn. 1982) (refusing to modify the stay where it would at best result in an avoidable lien). The Court finds that granting relief from the stay in this case would be futile for two reasons. First, to the extent the Movants' and Signal's non-bankruptcy claims fail to meet the requirements of § 523, judgments arising out of those claims would be dischargeable. Second, if the Movants are successful in their § 523 claims against Pol, any resulting liens would be avoidable under § 522(f) to the extent they impair his exemptions.

First, any claims the Movants assert against Pol can only result in dischargeable judgments to the extent those claims do not meet the requirements of § 523. In their fifth amended complaint in *David*, the Movants assert claims arising out of the violation of several federal statutes[34] as well as claims for fraud, negligent misrepresentation, and breach of contract against the "recruiter defendants," which includes Pol's company—Global Resources, Inc.—and would presumably include Pol himself if relief were granted. (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1592). Signal's cross-claims against Pol include: fraud, breach of contract, unfair trade practices, detrimental reliance, and indemnity. (*Id.* at Dkt. No. 1261). The Court

---

[33] *See* discussion *supra* Parts II.A. & B, at 5.

[34] Those statutes include: The Trafficking Victims Protection Act of 2003; The Rackateer Influenced and Corrupt Organizations (RICO) Act; and The Ku Klux Klan Act of 1871. (*David,* No. 2:08-cv-01220-SM-DEK, at Dkt. No. 1592).

notes that debts arising from breach of contract and negligent misrepresentation are not listed as non-dischargeable debts under § 523. Those claims—without more—cannot serve as the basis for a non-dischargeability complaint under § 523 and could therefore only result in dischargeable judgments.

Second, 11 U.S.C. § 522(f) provides the mechanism a debtor may use to avoid a lien to the extent that it impairs an exemption to which he would have been entitled.[35] "[A] judicial lien other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)" is specifically included as a type of lien that may be avoided. 11 U.S.C. § 522(f)(1). Section 523(a)(5) excepts domestic support obligations from discharge. 11 U.S.C. § 523(a)(5). Thus, even if the Movants and Signal are able to meet the requirements of § 523, Pol will be able to avoid any judgment liens to the extent the lien would impair his exemptions.[36] *See Bank of Cushing v. Vaughan (In re Vaughan),* 311 B.R. 573, 578–79 (B.A.P. 10th Cir. 2004) (allowing the debtors to use § 522(f) to avoid a post-petition lien on a non-dischargeable judgment to the extent it impaired their homestead exemption); *Rosenberg v. Corio (In re Corio),* 371 Fed. App'x 352, 356 (3d Cir. 2010) (holding that a debtor may avoid a post-petition lien under § 522(f)(1)(A) to the extent it impaired the debtors' homestead exemption).

Thus, because the Movants and Signal seek to pursue claims that can only result in either an avoidable lien under § 522(f) or a dischargeable judgment, blanket relief from the stay appears to be futile. By contrast, if relief is not granted, the Movants and Signal could only bring non-dischargeability actions against Pol in this Court and seek to enforce the judgments they

---

[35] Section 522(f)(1) provides: "Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . ." *Id.*

[36] A review of Pol's schedules indicates he does not have any interest in real property and he has claimed exemptions for his retirement account and $10,000.00 of his interests in his personal vehicle and his son's vehicle, leaving little non-exempt property for the Movants to attach, aside from pursuing a wage garnishment for up to 25% of Pol's earnings under Miss. Code. Ann. § 85-3-4. (Dkt. No. 3).

obtain, if any, to the extent they do not impair his exemptions. Stated differently, granting relief from the stay would result in—at best—a mix of avoidable judgment liens and dischargeable judgments while maintenance of the stay would not result in such futility. Accordingly, the Court finds that the 9th *Sonnax* factor disfavors relief from the automatic stay.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that the Movants' motion for relief from the stay is not well taken and should be denied. The Court finds it improbable that the Movants would be able to obtain any judgments against Pol that would have preclusive effect in this Court. Thus, judicial economy favors maintaining the stay in this case to allow the Movants to bring non-dischargeability actions in this Court. And the Movants have failed to show cause exists to modify the automatic stay to allow them to pursue the 11 non-bankruptcy actions pending in two separate states, neither of which the debtor resides in. In fact, all of the *Sonnax* factors applicable to this case counsel against modification of the automatic stay. Accordingly, the Court will set a status conference to address the filing deadline and procedures for filing any non-dischargeability adversaries in this case.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion is **DENIED**.

**## END OF OPINION ##**